# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| LOAN NGUYEN, | * | |
| | * | |
| Petitioner, | * | No. 19-1188V |
| | * | Special Master Christian J. Moran |
| v. | * | |
| | * | Filed: May 8, 2026 |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

<u>Leah VaSahnja Durant</u>, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner;

<u>Mallori Browne Openchowski</u>, United States Dep't of Justice, Washington, DC, for Respondent.

## **PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS**[1]

Pending is petitioner Loan Nguyen's motion for final attorneys' fees and costs. She is awarded a total of **$116,413.89.**

---

[1] Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This posting means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

## I.    <u>Procedural History</u>

Ms. Nguyen first consulted the law firm that represented her, Law Offices of Leah V. Durant, PLLC, on August 1, 2019.[2]  Ms. Durant drafted and filed a petition on August 13, 2019.  The petition is approximately 1.5 pages and does not cite any exhibits.  The petition notes that Ms. Durant had requested medical records and was filing the petition based upon the petitioner's representation.  Ms. Nguyen's petition alleged that an influenza ("flu") vaccine that she received on or about September 25, 2016 caused her to suffer Guillain-Barre syndrome ("GBS").

Because the Vaccine Injury Table associates flu vaccine with GBS when the GBS first manifests within 3-42 days, Ms. Nguyen's case was assigned to the special processing unit of the Office of Special Masters.  Ms. Nguyen periodically filed evidence to support her claim, including affidavits and medical records.  Upon review of this material, the Secretary expressed an interest in attempting informal resolution based upon the costs and risks of litigation.  Resp't's Status Rep., filed June 9, 2020.

To assist in determining Ms. Nguyen's future medical needs, Ms. Durant consulted with a life care planner with experience in the Vaccine Program, Roberta Hurley, on June 18, 2020.  After the Secretary also retained a life care planner with experience in the Vaccine Program, Laura Fox, Ms. Hurley traveled for a site visit in October 2020.[3]  It appears that due to the Covid pandemic, Ms. Fox did not attend the site visit in person.

The parties discussed a potential resolution for approximately one year.  After they did not reach an agreement, they were directed to file briefs regarding Ms. Nguyen's entitlement to compensation, focusing on when her GBS began.  Order, issued Oct. 25, 2021.

In due course, the parties argued their positions.  See Resp't's Br., filed Feb. 17, 2022; Pet'r's Mot. for Ruling on the Record, filed Feb. 18, 2022; Pet'r's Resp., filed Mar. 3, 2023.  Due to the complexity of the issue, the case was transferred out

---

[2] The source of information about the activities of various legal professionals are found in the timesheets, which were submitted as part of the pending motion for attorney's fees and costs.

[3] The source of information about Ms. Hurley's activities are found in her timesheet, which is contained among the documents supporting Ms. Nguyen's claim for reimbursement of her attorneys' costs.

of the special processing unit and assigned to the undersigned.  Order, issued Mar. 11, 2022.

Ms. Nguyen was instructed to provide additional information concerning the onset of her neurologic problems.  Order, issued Mar. 14, 2022.  She did so. Exhibit 35.  In the ensuing status conference, the parties explained that more information from one of the people who treated Ms. Nguyen, Dr. Manem, could assist with the resolution of the case.  Thereafter, the Secretary was authorized to subpoena Dr. Manem to a deposition.  Order, issued May 5, 2022.  It appears that rather than attend a deposition, Dr. Manem responded to questions in writing. Resp't's Status Rep't, filed Nov. 14, 2022.

In November 2022, the Secretary was assessing a life care plan that Ms. Hurley had prepared.  Id.  Ms. Hurley and Ms. Fox completed their life care plans in December 2022.  Resp't's Status Rep't, filed Apr. 10, 2023.

Although the life care planners had finished their work, the Secretary requested more information regarding Ms. Nguyen's claim for lost earnings. Id.  The Secretary responded to Ms. Nguyen's settlement proposal on May 19, 2023.

In response to the Secretary's proposals, Ms. Nguyen's attorneys consulted with Ms. Hurley.  The attorneys also brought in a new person, Kim Schleede, to assist them in understanding some economic aspects of the proposal.  Time entry for June 5, 2023.  Ms. Hurley's involvement led to a second site visit by the life care planners.  Time entry for Oct. 5, 2023.

The parties negotiated an attempted resolution for several months.  This process resulted in an agreement to resolve the case.  Order, issued Aug. 29, 2024. Pursuant to the parties' stipulation, Ms. Nguyen received compensation in a lump sum as well as an annuity.  Decision, issued Nov. 20, 2024.

Through the pending motion, Ms. Nguyen requests attorneys' fees of $130,569.80, $18,778.64 for attorneys' costs, and $400.00 for expenses that she bore personally.  Pet'r's Mot, filed May 21, 2025.  The Secretary did not respond.

## II.   Entitlement to Attorneys' Fees

Ms. Nguyen received compensation.  Therefore, she is entitled to an award of her reasonable attorneys' fees and costs.  42 U.S.C. § 300aa-15(e)(1).

### III.    Reasonable Amount of Attorneys' Fees and Costs

The undersigned has reviewed the fee application for its reasonableness. See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018). Ms. Nguyen's application is divided into two components: attorneys' fees and attorneys' costs.

### A.    Reasonable Attorneys' Fees

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required. Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

#### 1.    Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation. Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower. Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). In this case, the attorneys' work was done inside of the District of Columbia.

Ms. Nguyen requests various hourly rates for attorneys and paralegals at the law firm that represents her.[4] The primary attorney is Ms. Durant, who was assisted by Mr. Richard Amada. These rates have been accepted as reasonable. Rance v. Sec'y of Health & Hum. Servs., No. 18-222V, 2024 WL 5154816, at *2 (Fed. Cl. Spec. Mstr. Nov. 22, 2024).

---

[4] Totaling the number of hours for each professional at each hourly rate would improve the fee application.

4

2.     Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable. Nevertheless, a few topics merit attention.

a)     *Multiple Attorneys*

On some occasions, more than one attorney was working on the case. See, e.g., time entries for Nov. 23-29, 2021; Sep. 19, 2023. One specific example is that Mr. Milmoe, who appears generally not familiar with the case, spent time to prepare for a status conference and to attend a status conference. Time entry for Apr. 27, 2022. It seems that if Ms. Durant or Mr. Amada represented Ms. Nguyen in the status conference, then the amount of time spent preparing for the status conference would have been reduced.

Although these episodes are relatively infrequent, they do result in some (minor) overbilling.

b)     *Block Billing / Vague Entries*

Attorneys are expected to create time entries that specify the work being done. See Avgoustis v. Shinseki, 639 F.3d 1340, 1344-45 (Fed. Cir. 2011) (stating that requiring entries which permit effective review of the fees is in accord with cases from the Federal Circuit and the Supreme Court). The Office of Special Masters has advised attorneys about this requirement. Office of Special Masters, Guidelines for Practice under the National Vaccine Injury Compensation Program, Section X, Ch. 3 ¶ B.1.b. In accord with these authorities, Ms. Nguyen's attorneys were informed that they should divide entries of potentially more than one hour into shorter discrete tasks to avoid block billing. Order, issued Mar. 14, 2022, at 4.

Unlike the situation involving multiple attorneys, which were relatively rare, many time entries are vague, in part because multiple activities are block-billed. Examples of vague entries begin with some of the earliest entries in which a paralegal billed approximately three hours for requesting records. It is not readily apparent how many requests were sent, leading to questions. If the paralegal requested records from 18 doctors (meaning about 10 minutes per request), then spending three hours is probably reasonable. But, if the paralegal requested records from 3 doctors (meaning about one hour per request), then spending three hours is not reasonable.

5

Vague entries continue throughout.  One repeating issue is that multiple entries describe "reviewing evidence" (or similar phrasing) without specifying what evidence is being reviewed.  For example, a paralegal reviewed outstanding evidence on November 13, 2019.  On the same day, Ms. Durant also reviewed evidence.  On December 5, 2029, the paralegal again reviewed evidence.  Is this "evidence" the same?  Is the evidence difference?  The time sheets do not differentiate.

Similarly, Ms. Durant created a surprising number of entries with the notation approximating "Evaluate evidence and review client file.  Participate in client meeting.  Review claim/analyze filings.  Devise strategy."  Entries for Feb. 20, 2020; Mar. 5, 2020; Apr. 5, 2020; June 19, 2020; Aug. 31, 2020; Sep. 2, 2020; Nov. 12, 2020; Sep. 12, 2021; Mar. 23, 2022 (Mr. Amada); Mar. 31, 2022; Aug. 24, 2022; Feb. 1, 2023.

Furthermore, it appears that on some occasions, the attorneys re-reviewed evidence.  Although sometimes the evidence must be re-reviewed, there is also duplication.  See, e.g., entries for Apr. 11, 2022; Jan. 23, 2023; May 10, 2023; June 6, 2023; June 9, 2023; Apr. 6, 2024; Aug. 7, 2024.

Another topic is that attorneys charged for conducting research without specifying the topic of the research.  Entries for Dec. 3, 2020; Nov. 23, 2021; Dec. 3, 2021; May 19, 2023; Sep. 21, 2023; Apr. 30, 2024; July 8, 2024; Aug. 12, 2024; Aug. 16, 2024.  As explained in an opinion issued before these time entries were created, "2.5 hours to conduct legal research might be reasonable, but it is unknown what legal issues Ms. Durant was researching and for what purpose. . . . In terms of legal research, counsel is no doubt familiar with the bedrock cases in this program but may have been doing specific research on such things as CIDP cases, but no indication of the subjects researched was provided."  Soos v. Sec'y of Health & Hum. Servs., No. 16-626V, 2020 WL 2487882, at *2 (Fed. Cl. Apr. 15, 2020).

### c)    Billing for Clerical Work

Under various fee-shifting regimes, attorneys may charge for tasks performed by paralegals.  The justification is that the paralegal is stepping in for an attorney and charging a lower hourly rate for work an attorney would otherwise perform.  However, attorneys may not charge for clerical tasks because the attorney's hourly rate reflects overhead expenses, such as employing a secretary.  Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989); Bennett v. Dep't of Navy, 699

F.2d 1140, 1145 n.5 (Fed. Cir. 1983); Guy v. Sec'y of Health & Human Servs., 38 Fed. Cl. 403, 407-08 (1997).

The dichotomy between paralegal activities (billable) and clerical activities (non-billable) is often announced. However, a general principle to differentiate them is somewhat elusive. To qualify as a paralegal, a person needs special training and experience. See Impresa Construzioni Geom. Demenico Garufi v. United States, 100 Fed. Cl. 750, 768 (2011); see also Pressly v. United States, No. 18-1964, 2025 WL 1780947, at *12 (Fed. Cl. May 12, 2025). Thus, one way to categorize whether activities can be billed is to ask whether the activity required special skills.

Filing documents is one example of a clerical task that should not be charge. Although filing is essential, the employment of the person who can perform clerical tasks is built into the attorneys' high hourly rate as part of overhead. See Pickens v. Sec'y of Health & Hum. Servs., No. 17-187V, 2020 WL 414442 at *4 (Fed. Cl. Jan. 9, 2020) (denying motion for review of a decision reducing attorneys' fees and stating "legal training is not required to notify the Court that a document is being filed").

Here, there are examples of excessive charges for filing documents. See, e.g., time entries for Nov. 21, 2019 (twice); Feb. 6, 2020; Apr. 6, 2020 (twice); Aug. 31, 2020; May 6, 2021; Oct. 18, 2021; Oct. 5, 2023; Dec. 18, 2023; Jan. 11, 2024.

### d)    Client Communications

The law on this topic is clear. In a precedential opinion, the Federal Circuit has evaluated the specificity expected in time entries for communications between attorneys and clients. The Federal Circuit held that some disclosure of the topic of the communication does not violate the attorney-client privilege and, therefore, affirmed a judgment that had reduced a fee request due to vague entries. Avgoustis v. Shinseki, 639 F.3d 1340 (Fed. Cir. 2011). The Court of Federal Claims, in turn, followed Avgoustis in denying a motion for review of a decision from reducing the amount requested in attorneys' fees due to vague entries. Abbott v. Sec'y of Health & Hum. Servs., 135 Fed. Cl. 107, 112 (2017).

As noted above, Ms. Durant and, to an extent, Mr. Amada, created entries for meetings with their client. It is likely that due to a difference in languages, Ms. Nguyen's daughter may have participated in these meetings, although her presence is not necessarily reflected in the time sheets. Regardless, there appears to be a

7

higher-than-expected number of meetings.  Whether these meetings were reasonable is difficult to assess because the time entries do not provide much context for the meetings.

e)      *Summary*

Of the items listed above, the most consequential is the series of entries involving vague billing and block billing.  They are numerous and Ms. Durant was informed about this issue in Soos.  Ms. Durant and other legal professionals could have and should have created more specific time entries.  In this regard, although Ms. Durant has charged 3.5 hours for working on the fee application (entry for April 7, 2025), it is not readily apparent whether she revised any time entries.

Under these circumstances, the attorneys' fees will be reduced by 25 percent.  Percentage reductions are permitted.  See, e.g., Arnold v. United States, 166 Fed. Cl. 267, 284 (2023) (reducing attorneys' fees by 50% for a portion of the case), aff'd without op., No. 2023-1951, 2024 WL 4686768 (Fed. Cir. Nov. 6, 2024); Westdale Northwest Ctr. v. United States, No. 16-113, 2022 WL 1656718, at *12 (Fed. Cl. May 25, 2022) (reducing fees by 25 percent for lack of success on core claims); Yang v. United States, 156 Fed. Cl. 1, 8 (2021) (reducing total hours from 406.4 by 201.65, slightly over a 50 percent reduction in fees, for unproductive work); Greenhill v. United States, 96 Fed. Cl. 771, 780, 785 (2011) (reducing EAJA fee award by 60 percent for duplicative and excessive billing and limited success); Town of Grantwood Village v. United States, 55 Fed. Cl. 481, 489 (2003) (reduction of 30 percent for supplemental fee petition); Presault v. United States, 52 Fed. Cl. 667, 681 (2002) (reduction of 20 percent of the total requested fee); Cf. FastShip, LLC v. United States, 143 Fed. Cl. 700, 733 (2019) (reducing a damages expert fees by 85%), vacated on other grounds, 968 F.3d 1335 (Fed. Cir. 2020), reinstated after remand, 153 Fed. Cl. 215, 232-33 (2021), app. dismissed, No. 2021-2031, 2021 WL 2413188 (Fed. Cir. June 10, 2021); see also Gesch v. Sec'y of Health & Hum. Servs., No. 21-1426V, 2025 WL 1000918, at *3 (Fed. Cl. Spec. Mstr. Feb. 26, 2025) (reducing fees by 25 percent rather than performing a line-by-line analysis); Marshall v. Sec'y of Health & Hum. Servs., No. 14-491V, 2017 WL 6763068, *4 (Fed. Cl. Spec. Mstr. Dec. 7, 2017) (reducing fees by 25 percent for vagueness and excessive and duplicative billing); Helton v. Sec'y of Health & Hum. Servs., No. 16-0234V, 2017 WL 4020452, at *5-6 (Fed. Cl. Spec. Mstr. Aug. 28, 2017) (reducing fees by 25 percent for excessive billing).

Consequently, a reasonable amount of attorneys' fees is $97,927.35.

8

B.      **Costs Incurred**

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).  Ms. Nguyen requests a total of $18,778.64 in attorneys' costs.  Some items, including the cost of acquiring medical records, mailing costs, and the cost of a translator, are relatively routine. Ms. Nguyen has provided adequate documentation supporting the requested costs and most are reasonable.  Some items merit additional discussion.

Kate Coleman.  Ms. Coleman is a nurse and an attorney.  From November 2019 to January 2020, Ms. Coleman reviewed medical records and wrote a report. Coleman invoice.  She charged $150.00 per hour.

The rate that Ms. Coleman charged Ms. Nguyen is considerably less than the rate she charged in other cases.  See Stoliker v. Sec'y of Health & Hum. Servs., No. 17-990V, 2021 WL 1605960, at *2 (Fed. Cl. Spec. Mstr. Mar. 24, 2021).  This lower hourly rate balances out the lack of detail in Ms. Coleman's invoice.  She has not identified which records she reviewed or when she reviewed them.  It is likely that if Ms. Coleman had charged a higher hourly rate, then the number of hours would have been reduced.  See Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 781-83 (2013); Morse v. Sec'y of Health & Human Servs., 89 Fed. Cl. 683 (2009).  Under these circumstances, Ms. Coleman's charge of $3,112.50 is accepted as reasonable.

Kim Schleede.  Ms. Schleede, billing for JMW Settlements, LLC, has charged 7.25 hours of work at an hourly rate of $375.00 per hour.  These amounts are reasonable and credited.

Roberta Hurley.  Ms. Hurley has charged a total of $10,825.87 of which $9,187.00 reflects her work.  The balance reflects costs of traveling for two site visits.

In general, Ms. Hurley's entries are fine.  Like the attorneys, Ms. Hurley should be more specific about identifying the documents or records that she is reviewing.  See entries for June 25, 2020; June 26, 2020; August 2, 2020.

The travel costs are generally acceptable, too, with one exception.  For the first site visit, Ms. Hurley flew first class.  Special masters have not reimbursed for first class travel. See Davis v. Sec'y of Health & Human Servs., No. 16-774V, 2019 WL 2281748, at *2 (Fed. Cl. Spec. Mstr. Apr. 2, 2019); Reichert v. Sec'y of Health & Human Servs., No. 16-697V, 2018 WL 3989429, at *4 (Fed. Cl. Spec.

Mstr. Jun. 20, 2018); <u>Tetlock v. Sec'y of Health & Human Servs.</u>, No. 10-56V, 2017 WL 5664257, at *6 (Fed. Cl. Spec. Mstr. Nov. 1, 2017).  Thus, $692.10 is removed.

Petitioner is therefore awarded final attorneys' costs of $18,086.54.

Furthermore, the amount ($400.00) that petitioner has personally incurred is also reasonable.

## IV.    <u>Conclusion</u>

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, the undersigned awards attorneys' fees and costs as follows: a lump sum of **$116,413.89** (representing $97,927.35 in attorneys' fees, $18,086.54 in attorneys' costs, and $400.00 for Ms. Nguyen's incurred costs) to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[5]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.